# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
    JUDGE

## LETTER OPINION

May 22, 2007

Matthew R. Grabell
Grabell & Associates, P.A.
Two University Plaza
Suite 507
Hackensack, NJ 07601

    (*Attorney for Plaintiff*)

Daniel Y. Gielchinsky
Thomas J. Herten
Herten, Burstein, Sheridan, Cevasco, Bottinelli & Litt, LLC
Court Plaza North
25 Main Street
Hackensack, NJ 07601

    (*Attorneys for Defendants*)

    Re:   *Nash v. Mercedes Benz USA, et al.*
            Civil Action No. 06-692 (WJM)

Dear Litigants:

    This matter comes before the Court on Plaintiff's and Defendants' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. There was no oral argument. *See* Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion is **GRANTED,** Plaintiff's motion is **DENIED**, and Plaintiff's complaint is therefore **DISMISSED** with prejudice.

### I.  BACKGROUND

    The pertinent facts of this pension case are not in dispute. Plaintiff was employed by Mercedes-Benz Manhattan, Inc., a wholly-owned subsidiary of Defendant Mercedes-Benz USA,

LLC, as a car salesman from 1977 to 1991.  (Nash Aff. ¶ 2; La Spada Cert. Ex. D.)  During his employment, Plaintiff was compensated under a commissions-based system comprised of commissions earned by car sales and a monthly "draw" of $1,000.  (Nash Aff. ¶ 4; Grabell Cert. Exs. P, Q; Pl.'s Statement of Undisputed Material Facts ¶¶ 2-3; Defs.' Statement of Undisputed Material Facts ¶¶ 2-3.)  Plaintiff's draw was charged against and deducted from his earned commissions.  (Pl.'s Reply Br. 12; La Spada Cert. Exs. A-C.)  If Plaintiff failed to earn a commission for several months, he would continue to receive his $1,000 a month draw, and the draw amounts would be recorded as a rolling deficit until Plaintiff had earned enough commission to cover any accumulated deficits.  (Sliwicki Cert. 4-5.)  If his earned commissions exceeded the draw amount, he would receive the amount of his commission after a deduction equaling the amount of any draws previously paid to him.  (Pl.'s Reply Br. 14; Sliwicki Cert. 2-6.)  Thus, Plaintiff received a minimum paycheck each month of $1,000, although he had the potential to earn substantially more in any given month.

Plaintiff became eligible to receive his vested pension in January 2005.  (Grabell Cert. Ex. A.)  Two documents govern the determination of Plaintiff's pension: (1) the Summary Plan Description ("SPD"), a document that Plaintiff received; and (2) the Pension Plan, a document available to, but not previously requested by, Plaintiff.  (Nash Aff. ¶ 8; Pl.'s Br. 10; Grabell Cert. Exs. H, S; Defs.' Br. 3.)  The SPD states that Plaintiff's pension was determined in part by his "basic Monthly Earnings."  (Grabell Cert. Ex. S ¶ 11.)  It defines "Monthly Earnings" circularly as "the average of basic monthly earnings over the five year period immediately before Normal Retirement."[1]  (Id.)  The Pension Plan defines "Monthly Earnings" more specifically as "basic remuneration" and further details how basic remuneration would be calculated for salaried and hourly employees only.  (Grabell Cert. Ex. H ¶ 9.)  It further states: "Bonuses, commissions, rental allowances and any other additions to basic remuneration shall not be taken into consideration." (Id.)

In December 2004, Defendants calculated Plaintiff's pension based on his $1,536 average monthly draw[2] and not his $9,860 average monthly commission.  (Grabell Cert. Ex. B 9; Pl.'s Compl. ¶¶ 10-12.)  Plaintiff appealed this decision to the plan administrator, Defendant MBUSA Pension Plan Committee, and has exhausted all internal appeals.  (Pl.'s Statement of Undisputed Material Facts ¶ 21; Def s.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 21.)  This suit was filed on February 15, 2006 alleging that Defendants erroneously calculated Plaintiff's pension benefits by relying on Plaintiff's draw, as opposed to Plaintiff's earned commission, and seeking a declaration of his rights and entitlements under the pension plan and a judgment awarding pension benefits based upon Plaintiff's earned commission along with interest and

---

[1] After Plaintiff's retirement in 1993, Defendants revised its Summary Plan to clarify that for car salesmen, "basic monthly earnings means the amount of your monthly draw."  (Grabell Cert. Ex. R ¶ 10.)

[2] Plaintiff's draw increased to $3,000 a month after May 1, 1990.  Since Plaintiff terminated his employment with Mercedes-Benz Manhattan, Inc. in 1991, his five-year average monthly draw was calculated to be $1,536.

attorneys' fees. (Pl.'s Compl. 1-4.) The cross-motions for summary judgment are before the Court.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249. Unsworn assertions by the non-moving party that contradict sworn and proper affidavits submitted by the moving party will not create a material issue of fact. *See Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## III.   DISCUSSION

The Employee Retirement Income Security Act of 1974, as amended ("ERISA") underlies the Court's review of this pension dispute. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572-73 (3d Cir. 2006)("every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA"). Against this statutory framework, the Court considers the parties' cross-motions for summary judgment. Both motions center around three primary questions: (1) which plan document controls the determination of Plaintiff's benefits; (2) what standard the Court should apply in reviewing the pension plan administrator's determination of Plaintiff's benefits; and (3) whether the administrator's determination, that Plaintiff's draw was his basic monthly earnings, passes the appropriate standard of review. These issues are addressed in turn.

### A.   **Controlling Document**

The initial issue is whether the SPD or the Pension Plan governs Plaintiff's pension rights.[3] Under ERISA, the SPD must be "sufficiently accurate and comprehensive to reasonably apprise ... participants ... of their rights and obligations" under the Pension Plan in a manner "calculated to be understood by the average plan participant." 29 U.S.C. 1022(a). The Pension

---

[3] Although the SPD and the Pension Plan have been amended several times during and subsequent to Plaintiff's employment, the parties rely on the terms of the 1978 SPD (Grabell Cert. Ex. S) and the composite Pension Plan (Grabell Cert. Ex. H.) in their briefs. The Court will refer to these versions respectively as the "SPD" and "Pension Plan."

Plan provides the contractual terms of the plan, and to the extent that it is consistent with the SPD, the Pension Plan clearly controls.  If, however, a summary plan description at the vesting or accrual date conflicts with or contradicts the plan language, "it is the summary plan description that will control."  *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 378 (3d Cir. 2003); *see also Hooven*, 465 F.3d at 577.  Where such conflicts exist, a court must read the terms of the employee's contract for benefits "to include the terms of a plan document, as superseded and modified by conflicting language in the [summary plan description]."  *Id.*

In this case, two material terms are provided in the Pension Plan but absent in the SPD: the grant of discretion to the pension plan administrator, and the definition of monthly earnings.  Thus, the Court is faced with the question of whether silence in the SPD should be viewed as contradicting or conflicting with the Pension Plan.  Contrary to Plaintiff's suggestion, it is clear that the mere *absence* of terms in the SPD does not necessarily create a conflict.  To equate silence with conflict would reduce any pension plan to the specific terms contained in the summary plan description–an absurd result since by its own definition the summary plan description is meant to *summarize*, not recite, the detailed pension plan.  *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1136 (10th Cir. 1998); *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1997).  *See generally Burstein*, 334 F.3d at 379 ("it would defeat the purpose of having a summary of a full plan document if the SPD were to parrot all the terms of the plan document").  Equally clear is that where the SPD is silent regarding additional requirements materially affecting the rights or obligations of a plan participant, such silence may essentially contradict or conflict with the terms of a plan.  *See Burstein*. 334 F.3d at 379 (where the summary plan description gave an impression that the pension plan would automatically vest upon the plan's termination, and the language of the plan imposed a significant qualification on a participant's vesting rights, a conflict was found).  Although these guideposts are helpful, what exactly constitutes silence in the SPD that conflicts with a term in the Pension Plan is not entirely clear.  As discussed in greater detail below, the Court finds that based upon the specific facts of this case, the language of the Pension Plan governs both the grant of discretion and the definition of monthly earnings.

### B.      Review of the Pension Plan Administrator's Decision

Courts customarily review an ERISA benefits decision de novo.  *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989).  If, however, the pension plan grants discretionary authority to the plan administrator in determining eligibility benefits covered by ERISA, the denial of such pension benefits is reviewed under an arbitrary and capricious standard.  *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 390 (3d Cir. 2000)(interpreting *Firestone*).  This arbitrary and capricious review is a sliding scale review that is a "range, not a point . . . [ ] more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion."  *Pinto*, 214 F.3d at 392-93.  The following factors may be relevant in calibrating the intensity of scrutiny: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the

exact financial arrangement between the fund administrator and the employer; (4) the stability of the employer; (5) whether the employee is a current or former employee; (6) whether the employer stands to gain financially from a denial of an employee's claim; and (7) any procedural irregularities. *See id.; see also Porter v. Broadspire*, 2007 U.S. Dist. LEXIS 18576 (W.D. Penn March 15, 2007).

Plaintiff and Defendants debate whether discretionary authority has been bestowed upon the plan administrator. Both parties agree that while the SPD is silent regarding this issue, the Pension Plan explicitly grants discretionary authority to the administrator. (Pl.'s Br. 13; Defs.' Br. 6.) They disagree, however, regarding the implications of the SPD's silence. Plaintiff argues that where the SPD "differs from the underlying plan document," the SPD governs. (Pl.'s Br. 13.) As the SPD does not contain a grant of discretion, Plaintiff reasons that de novo review applies. (*Id.*) Defendants argue that silence in the SPD does not create a conflict, and the grant of discretion in the Pension Plan requires application of arbitrary and capricious review. (Defs.' Br. 10.)

The Court finds Plaintiff's argument flawed and lacking in support among jurisdictions that have addressed this issue. As discussed above, mere silence in the SPD regarding a term contained within the Pension Plan is not necessarily a conflict. *Burstein* and *Hooven* direct district courts to identify *conflicting or contradictory* language contained in the summary plan description and interpret these conflicting provisions as modifications to the plan document. Although Plaintiff's argument is strengthened if the SPD is silent regarding a material term required to be disclosed in the summary plan description under ERISA, the Court does not conclude that the grant of discretion in this case conflicts with its respective silence in the SPD. Furthermore, this conclusion is supported by the disclaimer contained in the SPD that "[t]he language of the Plan and Trust Agreement . . . supersedes any interpretations that might be incorrectly inferred from this Summary Plan Description." (Grabell Cert. Ex. S). Plaintiff's appeal to the contract construction of *contra proferentem* is unavailing since the Court would only look to this doctrine if it were to conclude, which it does not, that the SPD's silence on the grant of discretion were to supercede the language of the Pension Plan.

Therefore, the Court finds, as other courts have found, that where the pension plan contains language granting discretionary authority, silence in the summary plan description regarding the grant of discretion is not a conflict and apply the arbitrary and capricious standard. *See Tocker v. Philip Morris Co.*, 470 F.3d 481, 489 (2d Cir. 2006); *Martin v. Blue Cross & Blue Shield*, 115 F.3d 1201, 1205 (4th Cir. 1997); *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997); *Wald v. Southwestern Bell Corp.*, 83 F.3d 1002, 1006 (8th Cir. 1996); *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321-22 (9th Cir. 1995), overruled on other grounds by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006). The arbitrary and capricious standard in the Third Circuit is tempered by the sliding scale deference given to the administrator's decision under *Pinto*. With the *Pinto* factors in mind, the Court finds that it must conduct a more penetrating review than would be conducted under the deferential arbitrary and capricious review because: (1) the employer both funds and administers its own plan, and thus

has a conflict of interest requiring heightened scrutiny; (2) Plaintiff is not a sophisticated employee conversant in pension benefits; (3) Plaintiff was required to contact the benefit plan committee in order to review the Pension Plan or obtain a copy; and (4) Plaintiff is a former employee, and thus, Defendants have no conflict-mitigating factors like loss of morale or higher wage demands.  Therefore, the Court will review the administrator's calculation of benefits under a heightened arbitrary and capricious standard.

### C.     Monthly Earnings

The Court, having laid out the parameters of its review, now turns to the parties' core dispute regarding the plan administrator's use of Plaintiff's draw in determining his pension benefits.  Although both parties have submitted affidavits in support of their respective positions, the issue in dispute is one of the reasonableness of interpretation, not one of material fact.  If the plan administrator's interpretation of the Pension Plan is supported by sound reason, the Court will not disturb the calculation of benefits.

Initially, the Court must determine which document governs the plan administrator's calculation of benefits.  As discussed in greater detail above, the Pension Plan will be read to include any contradictory or conflicting terms in the SPD.  The SPD states that the pension benefits are determined by an employee's "basic Monthly Earnings."  (Grabell Cert. Ex. S ¶ 11.)  Although the SPD does not define this term in greater detail, the Court notes that it is qualified by the adjective "basic."  From the SPD language alone, it would be reasonable to conclude that Plaintiff's pension would be determined by something less than his monthly earnings.  Even if the Court were to assume that the term was ambiguous, the Pension Plan clarifies the term for salaried employees as "the monthly equivalent of his basic salary" and for hourly employees as "the monthly equivalent of his basic hourly rate plus overtime pay for a standard work week." (Grabell Cert. Ex. H ¶9.)  Although the Pension Plan narrows the interpretation of "basic Monthly earnings," such language cannot be viewed as conflicting with the more general, but not misleading, term in the SPD.  *See e.g.,Kelly v. The Retirement Pension Plan for Certain Home Office*, 73 Fed. Appx. 543, 546 (3d Cir. 2003)(language in the plan document that expands upon a term in the summary plan description is not contradictory language); *see also Charter Canyon Treatment Ctr.*, 153 F.3d at 1136; *Mers*, 144 F.3d at 1023.  As there is no conflict between the documents, the Pension Plan governs the interpretation of monthly earnings.

Next, the Court undertakes a heightened arbitrary and capricious review of the plan administrator's interpretation of basic monthly earnings in the Pension Plan.  Under traditional arbitrary and capricious review, the court may overturn this decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *McLeod v. Hartford Life and Acc. Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004).  Under *Pinto*, the Court balances the highly deferential standard with heightened scrutiny.

The Court notes that the plan administrator is not bound by a fixed method of calculating Plaintiff's pension benefits.  The Pension Plan clearly lays out the specific calculation of basic

6

remuneration for salaried and hourly employees.  Further, the Pension Plan directs the administrator to exclude commissions, along with bonuses, rental allowances, and other additions to basic remuneration, from consideration of monthly earnings.  For employees compensated under the draw and commission system like Plaintiff, however, the Pension Plan does not lay out a specific calculation of basic remuneration.  Thus, in order to grant pension benefits to Plaintiff,[4] the plan administrator had to interpret basic remuneration as applied to Plaintiff.

As Defendants argue, several factors indicate that the plan administrator's decision was not arbitrary and capricious: (1) the 1989 Mercedes-Benz USA's salary and commission schedule equates "Base Salary or Guarantee per Month" with Plaintiff's draw; (2) Mercedes-Benz USA's legal counsel, by affidavit, attested that Mercedes-Benz USA expected the draw to be a stable monthly earning for salespeople and equivalent to a basic salary; (3) the fact, that including commissions would give Plaintiff a pension equal to that of Mercedes-Benz corporate employees who held top positions within the hierarchy of the company, is further evidence of Mercedes-Benz USA's intent not to include Plaintiff's commissions in determining pension benefits; (3) Plaintiff and other similarly-situated salespeople were guaranteed a minimum monthly paycheck of the amount of the draw, and this guaranteed paycheck was equivalent to a base salary; (4) Mercedes-Benz USA never required salespeople, including Plaintiff, to repay the draw if they left the company with a draw deficit; and (5) monthly earnings is defined more narrowly in the Pension Plan for all employees, including salaried and hourly employees; and thus, the more narrow reading of monthly earnings for salespeople is consistent with the terms of the Pension Plan.  The Court additionally finds that it is reasonable to conclude that Plaintiff's guaranteed monthly draw amount, regardless of whether such draws were subsequently charged against or deducted from subsequently earned commissions, was Plaintiff's "basic monthly earnings" or "basic remuneration" based on a common understanding of those terms.

The Court is not persuaded by Plaintiff's arguments to the contrary.  Even construed liberally, Plaintiff advances several arguments that fail to undermine the reasonableness of the plan administrator's calculation of Plaintiff's benefits.  First, Plaintiff asserts that since the draw had to be repaid unlike a salary,[5] a draw could not be viewed as "basic monthly earnings" under the Pension Plan.  The Court finds that such reasoning is merely a matter of semantics, and cannot be an adequate basis to conclude that the plan administrator's decision was arbitrary and capricious.  Defendants do not assert that Plaintiff was paid a salary, rather they claim that absent specific language in the Pension Plan with regards to commission-based employees, his minimum guaranteed draw was the appropriate equivalent of "basic monthly earnings" or "basic remuneration."  Plaintiff never suggests that he was paid less than his draw in any month, nor that he was guaranteed more than his draw in any given month.  Second, Plaintiff asserts that his

---

[4] Defendants do not challenge Plaintiff's entitlement to a pension under the Pension Plan.

[5] Plaintiff submits several affidavits by former salespeople stating that they were compensated on a draw against commission system and never paid a "salary."

7

draw cannot be considered a guaranteed monthly payment, because his compensation plan states that "a draw will only be received if commissions are less than the entitled draw." Thus, Plaintiff incorrectly concludes that the draw amount was not a guarantee, because he technically received either a draw or commissions. In marked similarity to his first argument, Plaintiff fails to appreciate the fact that regardless of whether Plaintiff received a "commission" or a "draw," he nevertheless was guaranteed a minimum monthly amount equal to his draw. Third, Plaintiff's unsupported assertion, that the Pension Plan was mistakenly drafted to exclude commissions, because the plan was intended for the predominantly salaried and hourly corporate Mercedes-Benz employees in mind, neither detracts nor supports his position. While the Pension Plan does not specifically set forth what is meant by "basic remuneration" as applied to employees like Plaintiff, the exclusion of commissions from a calculation of basic remuneration is not, as Plaintiff suggests, evidence of internal inconsistency. Rather, the exclusion of commissions must be understood in context. The category of commissions is one of the examples of "other additions to basic remuneration." As such, it is reasonable to read that commissions above Plaintiff's basic remuneration–his draw–was a type of commission that was an addition to basic remuneration, and therefore properly excluded from the plan administrator's consideration.

Additionally, Plaintiff's reliance on cases outside of this jurisdiction is unavailing. First, Plaintiff's citation to a Seventh Circuit case does not support his position that "a discretionary determination that benefits would be calculated based on 'draws' that the plaintiff received against prospective commissions was arbitrary and capricious." (Pl.'s Br. 18.)(citing *Hess v. Hartford Life and Accident Insurance Co.*, 274 F.3d 456 (7th Cir. 2001).) The court in *Hess* did find that the plan administrator's decision to pay Hess based on her draw, and not her commission, was arbitrary and capricious. *Id*. at 459. The basis of the *Hess* court's ruling, however, was the plan administrator's failure to consider Hess's employment contract. *Id*. The contract explicitly stated that the basis of her benefits would transition from a draw-based system to a purely commissions-based system. *Id*. The administrator's decision was arbitrary and capricious because "the only reasonable interpretation [of the employment contract] was that the benefits would be based on the draw while it was in effect and on the base salary thereafter." *Id*. at 463. Plaintiff's citation to a Tenth Circuit case in defining earnings is similarly inapt as the court's review in that case was de novo, and the court was asked to interpret whether earnings included commissions received or commissions earned, but not yet paid, during a year. *See Andrews v. Blue Cross Blue Shield of Nebraska Employee Group Long Term Disability Ins. Plan*, 165 Fed. Appx. 650 (10th Cir. 2006).

The Court's arbitrary and capricious review of the Defendants' decision to interpret the phrase "basic remuneration" and "basic monthly earnings" is deferential, and the Court may not "substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Abnathya v. Hoffmann-La Roche, Inc*., 2 F.3d 40, 45 (3d Cir. 1993). The Court finds that the administrator's decision to treat Plaintiff's minimum guaranteed monthly earning (his draw amount) as basic remuneration is reasonable in light of the surrounding plan language and the purpose and intention of the plan. Even under a more penetrating review, the Court cannot conclude that such a determination failed the heightened arbitrary and capricious standard.

8

## IV.     CONCLUSION

       In light of the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.  Accordingly, Plaintiff's complaint is dismissed with prejudice.  An appropriate order follows.


                                                  s/William J. Martini
                                               William J. Martini, U.S.D.J.